**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| James R. *Bartholomew*, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Morgan Stanley and Morgan Stanley & Co. Incorporated,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 CV 4910 (AKH) |

**DECLARATION OF MICHAEL G. MCLELLAN IN SUPPORT OF JAMES R. BARTHOLOMEW'S MOTION FOR APPOINTMENT OF FINKELSTEIN THOMPSON LLP AS INTERIM CLASS COUNSEL FOR INVESTMENT ADVISOR ACT AND COMMON LAW CLAIMS**

I, Michael G. McLellan, hereby declare under penalty of perjury the following:

1.       I am associated with the law firm of Finkelstein Thompson LLP, counsel for Plaintiff James R. Bartholomew ("Bartholomew") in *Bartholomew v. Morgan Stanley and Morgan Stanley & Co. Incorporated*, No. 08-cv-4910 (S.D.N.Y.).  I submit this declaration in support of Bartholomew's Motion for Appointment of Finkelstein Thompson LLP as Interim Class Counsel for Investment Advisor Act and Common Law Claims.

2.       Attached hereto as Exhibit A is the Order and Opinion of District Judge Lawrence M. McKenna, dated July 16, 2008, in the matter of *In re UBS Auction Rate Securities Litigation*, 08-cv-2967.

3.       Attached hereto as Exhibit B is a true and correct copy of the Letter from Daniel C. Girard to the Honorable Alvin K. Hellerstein, July 2, 2008.

4.      Attached hereto as Exhibit C is a true and correct copy of the firm biography of proposed Interim Class Counsel, Finkelstein Thompson LLP.

5.      Attached hereto as Exhibit D is a true and correct copy of the firm biography of Schoengold Sporn Laitman & Lometti, P.C.

I hereby declare that under the laws of the United States and under the penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: July 21, 2008                                          __/s/ Michael G. McLellan
                                                            Michael G. McLellan

## <u>CERTIFICATE OF SERVICE</u>

I, Michael G. McLellan, one of the counsel for Plaintiff in the above-referenced action, do hereby certify that on July 21, 2008, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing.  Parties may access this filing through the Court's CM/ECF System.

__/s/ Michael G. McLellan_____
Michael G. McLellan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
In Re UBS AUCTION RATE              :    08 Civ. 2967 (LMM)
SECURITIES LITIGATION               :
                                    :    MEMORANDUM AND ORDER
This Document Relates To:           :
08 Civil 2967, 08 Civil 3082,       :
08 Civil 4352, 08 Civil 2753, and   :
08 Civil 5251.                      :
                                    :
------------------------------------x

McKENNA, D.J.,


## 1.


        The above matter, presently, comprises two putative class

actions brought against the same defendants, under Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C.

§§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule

10b-5, alleging fraud in the sale to members of the alleged classes

of auction rate securities.[1]  In very summary form, the gravamen of

the complaints is that the defendant UBS entities misrepresented

auction rate securities as liquid investments, which they were not,

that an appearance of liquidity was given the securities through

the support of the auction rate securities market by the UBS

entities and other broker-dealers, and that, on or about

February 13, 2008, all of the major broker-dealers, including UBS,

---

        [1] The two cases are Chandler, et al. v. UBS AG, et al., 08 Civ.
2967, and Sanchez v. UBS AG, et al., 08 Civ. 3082, which were
consolidated for all purposes by a stipulation so ordered by the Court
on May 16, 2008.

withdrew their support of the market, rendering some $300 billion of outstanding auction rate securities illiquid.

**2.**

Before the Court are motions (i) to consolidate with the present matter three cases, <u>Bonnist v. UBS AG, et al.</u>, 08 Civ. 4352, <u>Kassover v. UBS AG, et al.</u>, 08 Civ. 2753, and <u>Streit v. UBS AG, et al.</u>, 08 Civ. 5251, (ii) for the appointment of lead plaintiff and lead counsel in all of the cases except <u>Kassover</u> and (iii) for the appointment of interim class counsel in <u>Kassover</u>.

**3.**

"Rule 42 of the Federal Rules of Civil Procedure provides that the Court may consolidate 'actions involving a common question of law or fact.'  A determination on the issue of consolidation is left to the sound discretion of the Court." <u>Albert Fadem Trust v. Citigroup Inc.,</u> 239 F.Supp.2d 344, 347 (S.D.N.Y. 2002) (quoting Fed. R. Civ. P. 42(a)) (other citations omitted).

The <u>Bonnist</u> case is premised on substantially the same facts as the present matter and alleges, as do the plaintiffs in the present matter, the violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.  It comes within the terms of the stipulation so ordered by this Court on May 16, 2008 (<u>see</u> n.1., <u>supra</u>), and there is no objection to its consolidation with the present matter.  The motion for its consolidation with the present matter is granted.

2

The <u>Kassover</u> complaint, now amended, on the other hand -- while arising out of the same facts as the <u>Chandler</u>, <u>Sanchez</u> and <u>Bonnist</u> complaints, and brought against two of the three UBS entities named as defendants in those cases, and also a putative class action -- does not assert any claims under the Securities Exchange Act or Rule 10b-5, but only a claim under the Investment Advisers Act of 1940 and claims under a state statute and state common law. As counsel for the <u>Kassover</u> plaintiffs point out, the absence of allegations under the Securities Exchange Act (or the Securities Act of 1933) means that the case is not subject to the requirements and restrictions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), including the mandatory stay of discovery during the pendency of any motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B).[2]

"The trial court has broad discretion to determine whether consolidation is appropriate. In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation. However, the discretion to consolidate is not unfettered. Considerations of convenience and

---

[2] Aric A. and Mary Streit, as Trustees for the Benefit of the Streit Living Trust, who have filed a motion for their appointment as lead counsel herein, have filed a complaint subsequent to the filing of the motion for their appointment as lead counsel. <u>Streit v. UBS AG</u>, 08 Civ. 5251. That complaint alleges the violation of the Investment Advisors Act as well as of Sections 10(b) and 20(a) of the Securities Exchange Act. The Streits seek appointment as interim lead counsel for the Investment Advisors Act claims, as well as appointment as lead counsel in the present matter. <u>See</u> below.

economy must yield to a paramount concern for a fair and impartial trial." Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990) (citations omitted). In the present situation, plaintiffs' counsel in Kassover has made a legally respectable choice to proceed only under the Investment Advisors Act in order to avoid the difficulties posed by the PSLRA, one of which is delay.[3] A limited consolidation of Kassover is granted, however, in the interests of the orderly prosecution of these cases and the limitation of expense. As the cases proceed determinations will be made as to how these goals can be best achieved.

The Streit case, insofar as it alleges claims under the Securities Exchange Act, is also consolidated with the present matter for substantially the same reasons given as to the Bonnist case; insofar as the Streit case alleges claims under the Investment Advisors Act and state law, a limited consolidation, as in the case of Kassover, is granted.

**4.**

The PSLRA governs the appointment of lead plaintiffs in class actions brought under the Securities Exchange Act. 15 U.S.C. § 78u-4(a)(3). It requires that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately

---

[3] Counsel for plaintiffs in Kassover have already amended the complaint and initiated discovery, and the case has been referred to a Magistrate Judge for, inter alia, supervision of discovery.

representing the interests of class members. . . ." <u>Id.</u>
§ 78u-4(a)(3)(B)(i).   The court, further, "shall adopt a
presumption that the most adequate plaintiff in any private action
arising under [the Securities Exchange Act] is the person or group
of persons that -- (aa) has either filed the complaint or made a
motion in response to a notice under [<u>id.</u> § 78u-4(a)(3)(A)(i)];
(bb) in the determination of the court, has the largest financial
interest in the relief sought by the class; and (cc) otherwise
satisfies the requirements of Rule 23 of the Federal Rules of Civil
Procedure."   <u>Id.</u> § 78u-4(a)(3)(B)(iii)(I).   The presumption is
rebuttable.   <u>Id.</u> § 78u-4(a)(3)(B)(iii)(II).

Five motions seeking appointment as lead counsel in the
cases seeking relief under the Securities Exchange Act have been
filed.

**(i)**

One is by a group consisting of David Chandler, Shelly
Chandler, Robert Bee, Edward Taras, Larry S. Watanabe, David Ghiz,
and M. Richard Goldberg (all, collectively, the "Chandler Group"),
which, collectively, purchased $31,675,083 worth of auction rate
securities from UBS during the class period (presumably referring
to the period March 21, 2003 through February 13, 2008, the period
alleged in the <u>Chandler</u> complaint) and, in light of recent issuer
redemptions, now holds approximately $25,675,000 of auction rate

securities.    (Chandler Group Mem., May 19, 2008, at 1; Chandler Group Response, June 9, 2008, at 3.)

### (ii)

A second is by a group consisting of Ricardo Sanchez, Steven Sun, Martha Brixhoff, Paul Brixhoff, Linda Janczyck, Jeanne Walters, Vicki Hall, Marilyn Lesser, Arthur Gales, Steven Divito, Nasir Khalidi, Randy Lederman, Susan Silverman individually and as Trustee for Bessy Einhorn Family Trust, and Charles Silverman, individually and as Trustee for Charles C. Silverman Trust (all, collectively, the "Sanchez Group"), which, collectively, purchased $6,450,000 of auction rate securities from UBS during the class period (presumably referring to the period March 21, 2003 through February 13, 2008, the period alleged in the Sanchez complaint), and, in light of the sale (at a loss) by Mr. Sanchez of auction rate securities holdings of $550,000, now holds $5,900,000 of auction rate securities.  (Sanchez Group Mem., May 20, 2008, at 1 & 9 n.3.)

### (iii)

A third is by a group consisting of Randolph Bonnist and Teachers Count (both, collectively, the "UBS ARS Group"), which, collectively, purchased $1,095,000 or $1,145,000 worth of auction rate securities from UBS during the class period (presumably, the period May 8, 2003 through February 13, 2008, the period alleged in the Bonnist complaint), and, as far as appears, now holds that

amount.  (Bonnist Mem., May 20, 2008, at 2; Flannery Decl., May 20, 2008, Ex. B, Bonnist & Teachers Count certifications.)

### (iv)

A fourth is by one class member, Steven Oppenheimer, who purchased from UBS, during the class period March 21, 2003 through February 13, 2008, and still holds, $1,550,000 of auction rate securities.  (Glavin Decl., May 20, 2008, Ex. B, Oppenheimer certification).

### (v)

A fifth is by a group consisting of the Streits (see n.2, supra), which purchased $16,850,000 in auction rate securities from UBS during a class period and still hold that amount.  (Streit Mem., May 20, 2008, at 1.)  The Streits also purchased $3,450,000 of auction rate securities from a broker/dealer other than UBS, which securities are now held by UBS, and have borrowed, to sustain their business, over $10,000,000 from UBS.  (Id.)

On the information set forth in the motions, it is evident that either the Chandler Group or the Streits have the largest financial interest in the relief sought, an issue which turns on a resolution of how their respective interests are calculated.  Before considering that issue, however, it is necessary to address certain questions as to the interpretation of relevant provisions of the PSLRA.

**5.**

The PSLRA itself says that a court is to appoint as lead counsel "the member or members" of the class that the court determines to be most capable of adequately representing the interests of class members, and that that "most adequate plaintiff" is "the person or group of persons" that (in addition to other requirements) has the largest financial interest in the relief sought by the class.  15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I). The legislative history of the PSLRA has suggested a number of glosses on the statutory language.

The first is the (no doubt correct) perception that the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs.  See In re eSpeed Sec. Litig., 232 F.R.D. 95, 99-100 & n.23 (S.D.N.Y. 2005).  See also James D. Cox & Randall S. Thomas, "Does the Plaintiff Matter?," 106 Columbia L. Rev. 1587, 1588-89 (November 2006) ("The Congress clearly envisioned that various financial institutions -- pension funds, insurance companies, and mutual funds -- were the most likely types of investors who could combine a large financial stake in the suit's outcome with the sophistication to guide the suit to an appropriate result.")

Here, however, no institutional investor of the sort contemplated has come forward as a candidate for the lead plaintiff job.[4]

Another issue is the propriety of the aggregation of the financial stakes of multiple class members to achieve the required "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

One line of district court cases concludes that such aggregation "defeats the purpose of choosing a lead plaintiff." Goldberger v. FXRE Group, Ltd., 2007 WL 980417, at *4 (S.D.N.Y. Mar. 30, 2007). That position, it has been recently said, "is now the minority view." Reimer v. Ambac Financial Group, Inc., 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008) (citations omitted). Another line "recognizes that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA." Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (citation omitted). This Court, based upon the plain meaning of the unambiguous statutory language, follows this line of cases. Some cases, while allowing

---

[4] The UBS ARS Group includes Teachers Count, a "non-profit organization whose mission is to raise the status of the teaching profession and provide resources to the education community" (Flannery Supplemental Decl., May 30, 2008, Ex. A. at 1), which purchased $25,000 of auction rate securities during the class period. The UBS ARS Group characterizes Teachers Count as "an institutional investor that is precisely the type of lead plaintiff Congress sought to attract to the PSLRA process." (UBS ARS Response, May 30, 2008, at 5.) Even if that is correct -- and it can surely be questioned -- the financial interest of the UBS ARS Group is plainly not large enough to qualify the group as lead plaintiff under the statutory language of the relevant provisions of the PSLRA.

aggregation, have expressed concern over the aggregation of so many class members that the PSLRA's "express purpose of placing the control of securities class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group." <u>Id.</u> (citation omitted).  Groups of six through nine aggregated class members have been found not to be too large. <u>Barnet v. Elan Corp., PLC</u>, 236 F.R.D. 158, 162 (S.D.N.Y. 2005).

**6.**

As noted above, the Chandler Group (of seven class members) now holds (after deduction of redemptions) approximately $25,675,000 in illiquid auction rate securities.  (Chandler Group Response, June 9, 2008, at 3.)  The Streits contend that they hold $16,850,000 of auction rate securities purchased from defendants (Streit Response, June 9, 2008, at 3), but that there must, for PSLRA purposes, be added to that amount the $10.1 million that they have had to borrow from UBS because of the illiquidity of their auction rate securities, in order to "maintain their real estate business and to self-insure their properties."  (<u>Id.</u> at 3-4).  Thus, the Streits argue, their "total financial interest in this litigation exceeds $26,850,000," and "[t]hat amount substantially exceeds the $24,731,583 in face amount of [auction rate securities] that are held by all the Chandler movants after accounting for past

10

redemptions and additional redemptions that have been announced and will shortly be implemented." (Id. at 6 (footnote omitted).)

The $10.1 million borrowed by the Streits should not, logically, be added to the amount of auction rate securities they hold. In the first place, there has been no showing that their particular problem -- the need to borrow the $10.1 million to pursue their real estate business in view of the illiquidity of their auction rate securities -- is, in any way, typical of the alleged class; in the second place, exposure in the case of this consequence of the collapse of the auction rate securities market is not fairly measured by the amount of the funds borrowed but only by the cost of borrowing. In short, the Streits have not shown that they have a larger financial interest in the litigation than the Chandler Group. Arguments based on future redemptions and that such redemptions are more likely to affect the Chandler Group than the Streits are too speculative to take into account. At $24,731,583, the Chandler Group's stake in the litigation is greater than that of the Streits or any other of the movants for lead plaintiff appointment. Accordingly, the Court finds that the Chandler Group is presumed to be the most adequate plaintiff.

**7.**

The presumption that the most adequate plaintiff is the Chandler Group has not been overcome. The Group has shown that they are sufficiently cohesive to consider the issues in, and the

progress of, the case and to communicate with counsel.  Further, the Chandler Group "has made a preliminary showing of typicality and adequacy under Rule 23 sufficient to satisfy the requirements of the PSLRA."  Albert Fadem Trust, 239 F.Supp.2d at 347.  The claims of the numbers of the group are clearly typical of those of the class, and "there is no indication or evidence of conflict of interest between members of the [Chandler Group] and members of the purported class."  Id. at 348.

The Chandler Group is appointed as lead plaintiff as to all claims brought under the Securities Exchange Act.

## 8.

Under the PSLRA, the most adequate plaintiff -- here, the Chandler Group -- selects and retains counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Chandler Group's selections -- Girard Gibbs LLP (Lead Counsel), Stueve Siegel Hanson LLP (Co-Lead Counsel) and Seeger Weiss LLP (Liaison Counsel) -- are therefore appointed as counsel for Securities Exchange Act claims.

## 8.

The PSLRA, of course, does not govern the appointment of class counsel in cases brought under the Investment Advisors Act and state law.  Counsel in the Kassover case did the initial work on those claims, and it makes sense that they should remain responsible for prosecuting those claims.  Those counsel --

Schoengold Sporn Laitman & Lometti -- are appointed as interim class counsel for Investment Advisors Act and state law claims.

**9.**

Copies of this Memorandum and Order are being sent to counsel for defendants and to Seeger Weiss LLP, who are to fax copies forthwith to all counsel on the plaintiffs' side.

SO ORDERED.

Dated:   July **16,** 2008

_____
Lawrence M. McKenna
U.S.D.J.

13



**SCHOENGOLD**
**SPORN**
**LAITMAN**
**& Lometti**

Attorneys At Law

Cannon's Walk
19 Fulton Street, Suite 406
New York, New York 10038

Tel: 212.964.0046
Fax: 212.267.8137

www.spornlaw.com

## _FAX TRANSMITTAL SHEET_

**FROM:**    Frank R. Schirripa

**RE:**    _Bartholomew v. Morgan Stanley., et al.,_
    _No. 08-cv-4910 (S.D.N.Y.)_

**DATE:**    July 2, 2008

**NO. OF PAGES:**    21

**RECIPIENT(S):**

| Name | Organization | Fax Number |
|------|--------------|------------|
| Michael G. McLellan | Finklestein Thompson, LLP | 202-337-8090 |
| | | |
| | | |

Message:

_____

_____

_____

_____

_____

_The information contained herein and in any documents accompanying this facsimile transmission are confidential and/or legally privileged materials from the law firm of Schoengold Sporn Laitman & Lometti, P.C. The information is intended only for the addressee or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited, and that the documents should be returned to this firm immediately. In this regard, if you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you. Thank you_

**IF YOU DO NOT RECEIVE _ALL_ PAGES, PLEASE TELEPHONE US IMMEDIATELY AT (212) 964-0046.**

# GIRARD GIBBS LLP

Attorneys at Law

601 California Street, 14th Floor | San Francisco, CA 94108-2805
Tel: 415.981.4800 | Fax: 415.981.4846 | www.girardgibbs.com

## FACSIMILE COVER PAGE

### JULY 2, 2008

| TO: | FIRM OR ORGANIZATION: | FACSIMILE #: |
|---|---|---|
| EDUARD KORSINSKY, ESQ. | LEVI & KORSINSKY, LLP | (212) 363-7171 |
| NORMAN E. SIEGEL, ESQ. | STUEVE SIEGEL HANSON LLP | (816) 714-7101 |
| STEPHEN A. WEISS, ESQ. | SEEGER WEISS LLP | (212) 584-0799 |
| SAMUEL P. SPORN, ESQ. | SCHOENGOLD SPORN LAITMAN & LOMETTI, P.C. | (212) 267-8137 |
| RONIT SETTON, ESQ. | CADWALADER | (212) 504-6666 |

FROM:  AARON M. SHEANIN

RE:  GARY MILLER V. MORGAN STANLEY & CO., INC., ET AL.
SHARON SHAWN JAMAIL V. MORGAN STANLEY, ET AL.
JAMES R. BARTHOLOMEW V. MORGAN STANLEY, ET AL.

CASE CODE:  ARS:MS

NUMBER OF PAGES:  20
(INCLUDING COVER SHEET)

---

The information contained in this facsimile message is attorney-client privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the U.S. postal service.

# GIRARD GIBBS LLP

Attorneys at Law

601 California Street, 14th Floor | San Francisco, CA 94108-2819
Tel: 415.981.4800 | Fax: 415.981.4846 | www.girardgibbs.com

July 2, 2008

**VIA HAND DELIVERY**

The Honorable Alvin K. Hellerstein
United States Courthouse
500 Pearl St., Room 1050
New York, NY 10007

Re:  *Gary Miller v. Morgan Stanley & Co. Inc., et al.*, Case No. 08-cv-3012 (AKH)
     *Sharon Shawn Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-3178 (AKH)
     *James R. Bartholomew v. Morgan Stanley, et al.*, Case No. 08-cv-4910 (AKH)

Dear Judge Hellerstein:

We represent class members Donald Smith and Sam Solovey (collectively, the "Smith Group"), who have moved to consolidate the *Miller* and *Jamail* actions referenced above, and for appointment of Lead Plaintiff and Lead Counsel. We write in response to the Court's endorsed order of June 25, 2008 directing counsel for plaintiffs to advise the Court whether the motions for consolidation and appointment of Lead Plaintiff should be withdrawn in light of the motion before the Judicial Panel on Multidistrict Litigation to transfer all the ARS actions to a single court for coordinated pre-trial proceedings (*In re Auction Rate Securities (ARS) Marketing Litigation*, MDL No. 1979). The Smith Group agrees that the Court should stay proceedings pending a determination by the MDL Panel, but we respectfully submit that before doing so, the Court should first consolidate the three cases listed above (including the later-filed *Bartholomew* case) and rule on the fully-briefed motions for appointment of Lead Plaintiff, as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B).

These cases all arise out of Morgan Stanley's sales of auction rate securities. There are approximately 30 similar auction rate securities cases against various brokerage firms (*e.g.*, UBS, Bank of America, Wachovia, Wells Fargo, etc.) pending in courts around the country. The cases all allege that the brokerage firms sold auction rate securities as readily liquid, cash equivalent investments. The securities are now unsaleable following the collapse of the auction rate securities market in February 2008.

The *Miller* and *Jamail* cases pending in this Court allege claims against Morgan Stanley under the Securities Exchange Act of 1934. Under the PSLRA, these actions should be consolidated and Lead Plaintiffs and Lead Counsel appointed, notwithstanding the pendency of MDL proceedings. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (requiring the Court to consider motions for appointment and appoint a Lead Plaintiff within 90 days of publication of the notice of pendency of an action under the PSLRA). Motions for consolidation of *Miller* and *Jamail* and for appointment of Lead Plaintiff were filed on May 27, 2008, within the time period set forth in the PSLRA. The briefing shows that the Smith Group has the largest financial interest and satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23. Therefore, we respectfully submit that the Smith Group should be appointed as Lead Plaintiff, and its selection of counsel should be approved.

To:   The Honorable Alvin K. Hellerstein
Re:   *Gary Miller v. Morgan Stanley & Co. Inc., et al.*, Case No. 08-cv-3012 (AKH)
      *Sharon Shawn Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-3178 (AKH)
      *James R. Bartholomew v. Morgan Stanley, et al.*, Case No. 08-cv-4910 (AKH)
July 2, 2008
Page 2.


On May 28, 2008—one day after the Lead Plaintiff motions were due—an additional class action entitled *Bartholomew v. Morgan Stanley, et al.*, 08-cv-4910 (AKH) (S.D.N.Y.), was filed in this Court. That case, which arises out of the same conduct as the Exchange Act cases, attempts to avoid the PSLRA by pleading claims under the Investment Advisors Act ("IAA") and state law only.

Although *Bartholomew* is not presently the subject of a motion to consolidate, it should be consolidated with the Exchange Act cases because all of the cases involve common questions of law and fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The three cases: (1) allege that Morgan Stanley made material misrepresentations and omissions regarding auction rate securities and manipulated the auction market; (2) name overlapping defendants; and (3) are at a preliminary stage. Defendants have not filed an answer and no discovery has occurred in any case. That *Bartholomew* asserts claims under the IAA and state law, rather than the Exchange Act, does not preclude consolidation. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."). Consolidation of all three actions would serve judicial economy.

Faced with similar circumstances, the Hon. Laura T. Swain recently consolidated the auction rate securities class actions against Citigroup including four Exchange Act cases and one IAA case. The court explained that it "does not find persuasive the [IAA] Plaintiffs' argument that they will be prejudiced by consolidation and finds, rather, that the other parties may be prejudiced by a failure to consolidate." *LHB Insurance Brokerage Inc. v. Citigroup Inc., et al.*, 08-cv-3095 (LTS) (S.D.N.Y. June 25, 2008) (submitted herewith). Judge Swain appointed a lead plaintiff in the PSLRA cases, approved his selection of counsel, and appointed the same counsel as interim class counsel for the non-PSLRA claims. *See id.* at 7.

We respectfully submit that, as in the Citigroup cases, this Court should consolidate all of the above-captioned actions, appoint the Smith Group as Lead Plaintiff in the PSLRA actions, and approve its selection of counsel in the PSLRA cases and as interim class counsel for the non-PSLRA claims. Upon entry of orders consolidating the Morgan Stanley actions and appointing lead plaintiffs and counsel, the Court should stay further proceedings pending a decision by the JPML.


Respectfully submitted,

**GIRARD GIBBS LLP**

Daniel C. Girard


Enclosure

To:  The Honorable Alvin K. Hellerstein
Re:  *Gary Miller v. Morgan Stanley & Co. Inc., et al.*, Case No. 08-cv-3012 (AKH)
     *Sharon Shawn Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-3178 (AKH)
     *James R. Bartholomew v. Morgan Stanley, et al.*, Case No. 08-cv-4910 (AKH)
July 2, 2008
Page 3.


cc:  Eduard Korsinsky, Esq. (counsel for plaintiff in *Miller*)
     Norman E. Siegel, Esq. (counsel for the Smith Group)
     Stephen A. Weiss, Esq. (counsel for the Smith Group)
     Samuel P. Sporn, Esq. (counsel for plaintiff in *Bartholomew*)
     Ronit Setton, Esq. (counsel for Defendants)
     *All counsel served via facsimile*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

LHB INSURANCE BROKERAGE INC., individually
and on behalf of all others similarly situated,

               Plaintiffs,

     -v-

CITIGROUP INC. and CITIGROUP
GLOBAL MARKETS, INC.,

               Defendants.

------------------------------------------------------x

No. 08 Civ. 3095(LTS) (FM)

LISA SWANSON, individually and on behalf
of all others similarly situated,

               Plaintiffs,

     -v-

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. and CITI SMITH BARNEY,

               Defendants.

------------------------------------------------------x

No. 08 Civ. 3139 (LTS) (AJP)

SAMUEL A. STOCKHAMER and ALICE L.
STOCKHAMER, on behalf of themselves and
on all others similarly situated,

               Plaintiffs,

     -v-

CITIGROUP INC., and CITIGROUP GLOBAL
CAPITAL MARKETS, INC.,

               Defendants.

------------------------------------------------------x

No. 08 Civ. 3904 (LTS) (KNF)

WEDGEWOOD TACOMA LLC, individually and
on behalf of all others similarly situated,

                    Plaintiffs,

    -v-                                     No. 08 Civ. 4360 (LTS) (FM)

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. and CITI SMITH BARNEY,

                    Defendants.
---------------------------------------------------------------x

SAED GHALAYINI, individually and
on behalf of all others similarly situated,

                    Plaintiffs,

    -v-                                     No. 08 Civ. 5016

CITIGROUP INC., CITIGROUP GLOBAL
MARKETS, INC. and CITI SMITH BARNEY,

                    Defendants.
---------------------------------------------------------------x

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD PLAINTIFF'S COUNSEL

        Before the Court are related securities fraud class actions alleging that some or all

of Defendants Citigroup Inc., Citigroup Global Markets, Inc. and Citi Smith Barney (collectively,

"Defendants"), failed to disclose material facts while marketing auction rate securities ("ARS")

and that, once Defendants ceased their artificial support for the ARS auction market, the market

collapsed and Plaintiffs were left with illiquid ARS. Plaintiff Wedgewood Tacoma, LLC.

together with movant Jemstone, LLC (collectively referred to as "Wedgewood"), moved the

Court to consolidate the above-captioned putative class actions and for an order appointing them

lead plaintiffs and their counsel lead counsel. Movants David Dignam and Ted Link

(collectively "the Dignam Group") also moved the Court to consolidate the above-captioned

putative class actions and appoint the Dignam Group lead plaintiff and its counsel lead counsel.

Movant Dr. Michael A. Passidomo ("Dr. Passidomo") moved the Court to consolidate the above-

captioned putative class actions and for an order appointing him lead plaintiff and his counsel

lead counsel. Plaintiff LHB Insurance Group ("LHB"), moved the Court for an order appointing

it lead plaintiff. The Court construed each motion to relate to the above-captioned actions and

any class actions relating to the same subject matter as the above-captioned actions hereafter filed

in or transferred to this Court.

On June 11, 2008, the Court issued an order setting a briefing schedule and

scheduling a hearing on the applications for June 24, 2008. The Court received a memorandum

of law in opposition to the consolidation of the Stockhamer action, 08 Civ. 3904, from the

plaintiffs in that action ("Stockhamer Plaintiffs"), and a response to the Stockhamer Plaintiffs'

opposition from the Defendants. The Court received a memorandum of law and a reply

memorandum in further support of Dr. Passidomo's motion and in opposition to competing lead

plaintiff designation motions. The Court also received a memorandum of law and a reply

memorandum in further support of Wedgewood's motion and in opposition to competing motion.

In these latest papers, Wedgewood augmented its application with a request that its counsel be

designated interim class counsel with respect to non-PSLRA claims in the event the cases were

consolidated and Wedgewood selected as lead plaintiff. The Dignam Group filed a statement of

no opposition to Dr. Passidomo's motion and subsequently filed a supplement, indicating that it

took no position on the challenges to Dr. Passidomo's or Wedgewood's adequacy as a lead

CONORDER.WPD          VERSION 6/25/08                                                    3

plaintiff, but indicated that it was still willing to serve as lead plaintiff, if the Court desired. LHB filed no additional papers.

On June 24, 2008, the Court held a hearing on the motions. Counsel appeared on behalf of LHB, on behalf of the Dignam Group, on behalf of the Stockhamer Plaintiffs, on behalf of Wedgewood, on behalf of Dr. Passidomo and on behalf of the Defendants. The Court has considered thoroughly all submissions and argument related to these motions and the decision to be rendered reflects such consideration. For the following reasons, and for the reasons stated on the record of the hearing, the Court grants the motions to consolidate and Dr. Passidomo's motion for appointment as lead plaintiff and approves Dr. Passidomo's selection of Zwerling, Schachter & Zwerling LLP as lead counsel. The oral application of the Stockhamer Plaintiffs and their counsel to be appointed as lead or co-lead plaintiffs and counsel with respect to the non-PSLRA claims is denied.

## Motion to Consolidate

Rule 42 of the Federal Rules of Civil Procedure provides that the Court may consolidate "actions involving a common question of law or fact." Fed. R. Civ. P. 42(a). A determination on the issue of consolidation is left to the sound discretion of the Court. Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990); Zicklin v. Breuer, 534 F. Supp. 745 (S.D.N.Y. 1982).

The Court finds that all of the above-captioned the actions present common factual and legal issues, involve overlapping defendants and will involve similar subject matter and similar issues related to class certification. The Court does not find persuasive the Stockhamer Plaintiffs' argument that they will be prejudiced by consolidation and finds, rather,

that the other parties may be prejudiced by a failure to consolidate. Accordingly, the Court grants the motions for consolidation in the interests of judicial economy.

<u>Motion for Appointment as Lead Plaintiff</u>

The PSLRA provides in relevant part that "the court shall . . . appoint as lead plaintiff the member or members of the purported class that the Court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In making its determination on a motion for appointment of a lead plaintiff, the Court is also required to adopt the rebuttable presumption that the "most adequate plaintiff" is

> the person or group of persons that– (aa) has either filed the complaint or made a motion in response to [the initial class] notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only upon proof by a member of the purported class "that the presumptively most adequate plaintiff–(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses which render such plaintiff incapable of adequately representing the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(II).

The Court finds that Dr. Passidomo is the presumptively most adequate plaintiff under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) based on his undisputed financial interest and his preliminary showing that he meets the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. <u>See</u> Fed. R. Civ. P. 23; <u>see also</u> <u>In re Oxford Health Plans</u>, 182 F.R.D. 42,

49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The claims of Dr. Passidomo are typical of the class because his claims and injuries arise from the same course of conduct as that from which claims of the other class members arise. The adequacy of representation component of Rule 23 is also satisfied, as there is no conflict of interest between Dr. Passidomo and members of the purported class, he has obtained qualified and experienced counsel, and has a significant interest in the outcome of the litigation so as to ensure vigorous prosecution of the case. Cf. Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). The Court's preliminary determination of typicality and adequacy, will not, however, preclude any party from contesting class certification on such bases in the future.

The Court finds that the issues that Wedgewood raised in an attempt to rebut the presumption that Dr. Passidomo is the presumptive most adequate plaintiff are insufficient to raise any substantial issue as to Dr. Passidomo's adequacy or integrity, or as to whether he is subject to unique defenses, so that the presumption remains unrebutted.

The Court hereby grants Dr. Passidomo's motion for appointment as lead plaintiff, as to all causes of action asserted in the consolidated cases. The lead plaintiff designation motions of LHB, the Dignam Group and Wedgewood are denied.

<u>Appointment of Lead Counsel</u>

Subject to the Court's approval, the most adequate plaintiff shall select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Dr. Passidomo seeks approval of his selection of Zwerling, Schacter & Zwerling LLP as lead counsel. Upon review of the papers submitted in support of Dr. Passidomo's motion and consideration of further representations

made on the record, the Court finds that Zwerling, Schacter & Zwerling LLP has had substantial experience and success in prosecuting securities class actions, rendering it capable of serving as lead counsel in this action. (Speirs Aff., Ex. D.)

The Court further finds that Dr. Passidomo's approximately $10,950,000 stake in this action provides the type of incentive for close supervision of counsel that the PSLRA contemplates. Accordingly, Dr. Passidomo's selection of Zwerling, Schacter & Zwerling LLP as lead counsel is approved.

Interim Class Counsel

Federal Rule of Civil Procedure 23(g)(3) provides that the Court may appoint interim class counsel prior to the certification of a class. With respect to the non-PSLRA claims, the Court finds, based on the papers submitted in support of Dr. Passidomo's motion and the further representations made during the hearing regarding the firm's willingness and ability to assume the interim class counsel position, that Zwerling, Schacter & Zwerling LLP has the necessary experience to render it a capable interim class counsel with respect to the consolidated, non-PSLRA claims. The Court further finds that appointment of co-counsel with regard to the non-PSLRA actions is unnecessary at this time, and might, in fact, be detrimental to effective prosecution of the proceedings.

It is, therefore, ORDERED that:

## A. LEAD PLAINTIFF AND LEAD COUNSEL

1. Dr. Michael A. Passidomo is appointed Lead Plaintiff.

2. Zwerling, Schachter & Zwerling LLP shall serve as Lead Counsel for all plaintiffs in the

Consolidated Actions. Zwerling, Schachter & Zwerling LLP shall also serve as interim class counsel with regard to the non-PSLRA claims in the Consolidated Actions.

Lead/Interim Counsel shall have the following responsibilities:

  a. Sign any consolidated complaint, motions, briefs, discovery requests, objections, or notices on behalf of all plaintiffs or those plaintiffs filing the particular papers.

  b. Conduct all pretrial proceedings on behalf of plaintiffs.

  c. Brief and argue motions.

  d. Initiate and conduct discovery.

  e. Speak on behalf of plaintiffs at any pretrial conference.

  f. Employ and consult with experts.

  g. Conduct settlement negotiations with defense counsel on behalf of plaintiffs.

  h. Call meetings of plaintiffs' counsel.

  i. Distribute to all plaintiffs' counsel copies of all notices, orders, and decisions of the Court to the extent counsel have not registered on the ECF system for this case; maintain an up-to-date list of counsel available to all plaintiffs' counsel on request; and keep a complete file of all papers and discovery materials filed or generated in the Consolidated Actions, which shall be available to all plaintiffs' counsel at reasonable hours.

3. All other applications for appointment as lead (or co-lead) Plaintiff or counsel are denied.

## B. CONSOLIDATION

1. The motions for consolidation are granted and the above-captioned actions are hereby consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a). The consolidated cases do not include Finn v. Smith Barney, et al., 08 Civ. 2975. The consolidated securities cases shall be referred to collectively as In re Citigroup Auction Rate Securities Litigation, Master File No. 08 Civ. 3095 (LTS)(FM).

2. No action taken hereunder shall have the effect of making any person, firm or corporation a party to any action in which the person or entity has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

## C. MASTER DOCKET AND SEPARATE ACTION DOCKETS

1. A Master Docket is hereby established for the consolidated proceedings in the actions consolidated herein and any other actions subsequently consolidated with them either for all purposes or for pretrial purposes (the "Consolidated Actions"). Entries in said Master Docket shall be applicable to the Consolidated Actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

2.        (a) When a pleading is filed and the caption, pursuant to this Order, shows that it is applicable to "All Actions," the parties shall electronically or manually file such pleading pursuant to this Court's Guidelines and Amended Instructions for Electronic Case Filing.

         (b) When a pleading is electronically filed and the caption, pursuant to this Order,

shows that it is applicable to "All Actions," the parties shall electronically file such pleading in the Master File only. Docket entries shall not be made to each separate action.

(c) When a pleading is manually filed and the caption, pursuant to this Order, shows that it is applicable to "All Actions," the parties shall submit to this Court the original pleading for the Master File. No copies shall be submitted for each separate action. Upon receiving the original pleading, the Clerk shall docket the pleading to the Master File only. Docket entries shall not be made to each separate action.

## D. MASTER FILE AND SEPARATE ACTION FILES

1. A Master File is hereby established for the consolidated proceedings in the Consolidated Actions. The Master File shall be 08 Civ. 3095. The original of this Order shall be docketed by the Clerk of Court in the Master File herein established.

2. The Clerk shall maintain a separate file for each of the Consolidated Actions, and filings shall be made therein in accordance with the regular procedures of the Clerk of this Court except as modified by Section B of this Order. The Clerk shall docket a copy of this Order in each such separate file. Once the Clerk has docketed this Order, counsel of record in each of the Consolidated Actions will receive a Notice of Electronic Filing.

## E. NEWLY FILED OR TRANSFERRED ACTIONS

1. When a class action that relates to the same subject matter as the Consolidated Actions is hereafter filed in or transferred to this Court and assigned to the undersigned, it shall be

consolidated with these actions in the same manner as the cases identified in Section A above (provided that any case transferred to this Court solely for pretrial proceedings shall be consolidated only to that extent absent further order of this Court), except as provided below, and the Clerk of Court shall:

(a)    Docket a copy of this Order in the file for newly filed or transferred actions.

(b)    Make an appropriate entry in the Master Docket.

2.    The Court requests the assistance of counsel in calling to the attention of the Clerk the filing or transfer of any case which might properly be consolidated with these actions.

## F. APPLICATION OF THIS ORDER TO SUBSEQUENT CASES

1.    This Order shall apply to each class action assigned to the undersigned alleging claims similar to those set forth in these actions against Citigroup Inc., and/or its subsidiaries. This Order shall apply to each such case which is subsequently filed in or transferred to this Court and which is assigned to the undersigned, unless a party objecting to the consolidation of that case or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk notifies counsel for that party of this Order. The provisions of this Order shall apply to such action pending the Court's ruling on the application.

2.    Unless a plaintiff in a subsequently filed or transferred case is permitted by the Court to use a separate complaint, defendants shall not be required to answer, plead or otherwise move with respect to that complaint in any such case. If a plaintiff in any such case is permitted to use a separate complaint, each defendant shall have thirty days from the date the Court grants such

permission within which to answer, plead or otherwise move with respect to any such complaint.

## G. CAPTIONS

1. Every pleading filed in the Consolidated Action, and in any separate action included therein, shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————— x
IN RE CITIGROUP AUCTION         :
RATE SECURITIES LITIGATION  :
                                                  :          MASTER FILE
                                                  :          08 Civ. 83095 (LTS)(FM)
                                                  :
This Document Relates To:           :
                                                  :
                                                  :
                                                  :
                                                  :
————————————————————— x

2. When a pleading is intended to be applicable to all actions to which this Order applies, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption. When a pleading is intended to apply to fewer than all of such actions, the docket number for each individual action to which it is intended to apply and the name of the plaintiff in said action shall appear immediately after the words "This Document Relates To:" in the caption.

## H. FILING AND DOCKETING

1. When a paper is filed and the caption shows that it is applicable to "All Actions," the parties shall electronically or manually file such paper pursuant to this Court's Electronic Case Filing Rules and Instructions.

2.    (a)  When a paper is electronically filed and the caption shows that it is applicable to "All Actions," the parties shall electronically file such paper in the Master File only.  No docket entries shall be made to each separate action.

(b)  When a paper is manually filed and the caption shows that it is applicable to "All Actions," the parties shall submit to this Court the original paper for the Master File. Copies shall not be submitted for each separate action.  Upon receiving the original paper, the Clerk shall docket the paper to the Master File only.  Docket entries shall not be made to each separate action.

3.    (a)  When a paper is filed and the caption shows that it is applicable to fewer than "All Actions," the parties shall electronically or manually file such paper pursuant to this Court's Guidelines and Amended Instructions for Electronic Case Filing.

(b)  When a paper is electronically filed and the caption shows that it is applicable to fewer than "All Actions," the parties shall electronically file such paper in the Master File and electronically file such paper to each separate action to which it applies.

(c)  When a paper is manually filed and the caption shows that it is applicable to fewer than "All Actions," the parties shall submit to this Court the original paper for the Master File and copies of such paper for each separate action to which it applies.  Upon receiving the papers, the Clerk shall docket the original paper to the Master File and docket copies of such paper to each separate action to which it applies.

## I. SCHEDULE

1. The Lead Plaintiff, shall file and serve a Consolidated Amended Complaint for the Consolidated Actions and any actions subsequently consolidated with them, within sixty (60) days of the date of this Order.

2. Pending filing and service of the Consolidated Amended Complaint, defendants shall have no obligation to move, answer, or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them, or to any discovery requests previously served in any of the consolidated actions.

3. Defendants shall answer or otherwise respond to the Consolidated Amended Complaint within of sixty (60) days after service thereof.

4. If Defendants move to dismiss the Consolidated Amended Complaint, opposition papers shall be served and filed within forty-five (45) days after the filing and service of such motion, and any reply papers shall be served and filed within thirty (30) days after the filing and service of plaintiffs' opposition papers.

5. Further proceedings in these consolidated actions will be conducted in compliance with the provisions of the Initial Conference Order dated April 21, 2008, and issued in 08 Civ. 3139 (Swanson) dated April 21, 2008, and in accordance with applicable orders, federal and local court procedural rules and Individual Practices Rules of the undersigned, including Rule 2.B. thereof.

This Order resolves docket entries nos. 7, 10, 13 and 16 in case no. 08 Civ. 3095; docket

entry no. 9 in case no. 08 Civ. 3139; docket entry no. 5 in case no. 08 Civ. 3904; and docket

entry no. 5 in case no. 08 Civ. 4360.

        SO ORDERED.

Dated: New York, New York
       June 25, 2008

                                            LAURA TAYLOR SWAIN
                                            United States District Judge



# FIRM RESUME
# 2008

1050 30th Street, NW · Washington, DC 20007

100 Bush Street, Suite 1450 · San Francisco, CA 94104

# FINKELSTEIN THOMPSON LLP

FINKELSTEIN THOMPSON LLP ("the firm"), is a seventeen-lawyer litigation firm, with offices in Washington, D.C. and San Francisco, CA, focusing primarily on complex financial litigation involving antitrust violations, fraud and crime in the banking, securities and commodities industries, and consumer fraud.

By concentrating exclusively on litigation, rather than a generalized transactional practice, the firm avoids the conflicts of interest, both actual and philosophical, that can arise from multi-faceted representation, and is able to offer the kind of hard-hitting approach that modern financial litigation demands. Since 1993, the firm has served in a leadership position in cases that have recovered many hundreds of millions of dollars for investors and consumers.

The firm's professional staff includes not only experienced and expert lawyers but also a certified financial analyst with a financial market background. The firm draws on this in-house expertise to provide the cost-efficient and timely analysis of complex transactions needed in fast-moving litigation. In addition, because the outcome of litigation is often dependent on the strength of expert testimony, the firm has developed strong working relationships with nationally prominent outside consultants in the areas of securities, commodities, antitrust, banking, consumer fraud, marketing and economics.

## HISTORY

The firm was founded in 1977 by Burton H. Finkelstein and Douglas G. Thompson, Jr. Thomas J. Loughran (deceased) joined the firm in 1984, directly from his position as Director of the Division of Enforcement at the Commodity Futures Trading Commission. The firm's offices are located in Georgetown in the historic Duvall Foundry and in San Francisco in the Financial District.

## EXPERIENCE

Our named partners have over seventy years combined experience in the prosecution and defense of complex financial civil and criminal matters. Senior partner Burton H. Finkelstein is the former head of the Administrative and Criminal Trial Unit of the Securities and Exchange Commission. Douglas G. Thompson, Jr. is an alumnus of the securities litigation group of a major Washington, D.C. law firm. Thomas J. Loughran was a former Securities and Exchange Commission Special Counsel and former Director of the Division of Enforcement of the Commodity Futures Trading Commission. The other partners and associates have extensive experience in a variety of complex litigation fields. The firm has seventeen lawyers and a Chartered Financial Analyst. The firm has practiced before the Securities and Exchange Commission, Commodity Futures Trading Commission, Federal Trade Commission, Federal Communications Commission, U.S. Copyright Office, New York Stock Exchange, Chicago Board of Trade, National Association of Securities Dealers, National Futures Association, and in various state and federal trial and appellate courts across the country, in civil and criminal enforcement matters and in private damage litigation. The firm has considerable expertise and experience in defending and prosecuting complex financial class action claims.

The firm is involved in class action litigation in federal and state courts nationwide. We have developed a reputation for successful and thorough representation of class clients against many of the largest and most powerful companies in the country. As part of our efforts to serve our clients' interests in the most effective and efficient manner possible, the firm has established ongoing relationships with other class action law firms whose size, location or expertise complement our own. We have won judgments and negotiated settlements that have recovered an aggregate of over one billion dollars for class members.

The firm manages prominent roles in many of the largest nationwide class actions, including:

- In re "Light" Cigarette Litigation, Case No. 04cv1945 (E.D.N.Y), more than a dozen suits in states across the country against tobacco manufacturers alleging consumer fraud relating to the manufacture and sale of so-called "light" cigarettes, in which the firm is pursuing claims on behalf of millions of class members.

- In re Natural Gas Commodity Litigation, Case No. 03cv6186 (S.D.N.Y.) –The lawsuit alleged that defendants violated the federal commodity laws by knowingly and deliberately reporting inaccurate, misleading and false trading information (including artificial volume and price information) to trade publications that compile and publish widely-followed indices of natural gas spot prices. In addition, the lawsuit alleged that defendants engaged in a variety of fraudulent trade reporting strategies, including wash trades, whose purpose was to create the perception of increased liquidity and demand for natural gas, and thus to manipulate the spot prices of natural gas.

## SECURITIES & COMMODITIES CLASS ACTION LITIGATION

Since its inception in 1977, the firm's securities litigation practice has extended across a wide range of shareholders' securities litigation, from accounting fraud, allegations of insider trading, proxy statement fights, and minority shareholder rights being violated, to cases alleging misstatements in prospectuses. The firm regularly litigates substantive federal issues under the Securities Act of 1933, the Securities Exchange Act of 1934, the Reform Act of 1995, tenders offers under the Williams Act, derivative suits under State and Federal law, and unfair business practices claims.

Our clients include institutional investors, pension funds, high-net worth individuals and retail investors. While few class action securities suits go to trial, substantial skill and experience is required to investigate, prepare, and litigate the underlying claims to successful resolution. The firm enjoys a national reputation for high-quality and successful recoveries for our clients.

The firm also selectively prosecutes actions pursuant to the Commodity Exchange Act regarding market manipulations involving commodity futures and options. To date, the firm has enjoyed considerable success in these matters, which are recognized as some of the most difficult causes of action to successfully pursue.

SETTLED REPRESENTATIVE SECURITIES AND COMMODITIES CLASS ACTION CASES

1.  In re Merrill Lynch & Co., Inc. Research Reports Litigation, MDL Docket No. 1484 (S.D.N.Y.) – Executive Committee member; Lead Counsel in six of the underlying actions; $125 million settlement achieved.

2.  In re Natural Gas Commodity Litigation, Case No. 03cv6186 (S.D.N.Y.) – Co-Lead Counsel; over $100 million achieved in settlements.

3.  PaineWebber Securities Litigation, Case No. 94cv8547 (S.D.N.Y) – Executive Committee member; $200 million settlement achieved.

4.  Prudential Securities Litigation, MDL Docket No. 1005 (S.D.N.Y.) – Executive Committee member & Co-Chair of Settlement Committee; $150 million settlement achieved.

5.  Kidder Peabody Securities Litigation, Case No. 94cv3954 (S.D.N.Y.) – Executive Committee member; $19 million settlement achieved.

6.  Holly Glenn v. Polk Audio, Inc., Case No. 99cv4768 (Md. Cir. – Baltimore) – Co-lead Counsel; $4.8 million settlement achieved (an increase of nearly 50% of shareholder buyout value).

7.  Grecian v. Meade Instruments, Inc., Case No. 06cv908 (C.D. Cal.) – Sole Lead Counsel on behalf of shareholders claiming securities fraud violations related to alleged illegal backdating of executive stock options. $3 million and corporate governance changes achieved.


ONGOING REPRESENTATIVE SECURITIES AND COMMODITIES CLASS ACTION CASES

1.  Freeland v. Iridium World Communications, Ltd., Case No. 99cv1002 (D.D.C.) – a consolidated securities fraud class action against Motorola, Inc. and other corporate entities in connection with the development and deployment of the Iridium satellite telephone network, in which the firm serves as Liaison Counsel and a member of the Lead Plaintiffs' Executive Committee.

2.  In re Crude Oil Commodity Litigation, Case No. 06cv6677 (S.D.N.Y.) – the firm has been appointed an Executive Committee member in an action alleging that the defendants manipulated the market for crude oil.

3.  Freeland v. Iridium World Communications, Ltd., Case No. 99cv1002 (D.D.C.) – The firm serves as Liaison Counsel and a member of the Lead Plaintiffs' Executive Committee in this securities fraud class action against Motorola, Inc. and other corporate entities in connection with the development and deployment of the Iridium satellite telephone network.

4.  Rudolph vs.UT Starcom, et al, No. 3:07-CV-04578-SI (N.D.Ca.) – The firm serves as sole Lead Counsel in a securities fraud class action against UT Starcom and certain officers in connection alleged illegal backdating of executive stock options.

5.  In re Interbank Funding Corp. Securities Litigation (D.D.C.) – The firm serves as Lead Counsel in a securities fraud class action against Radin Glass and CIBC Oppenheimer's alleging their lack of due diligence and compliance with accounting standards permitted InterBank's continued operation of a Ponzi scheme.  $4.5 million settlement already achieved with Simon Hershon, President and CEO of InterBank.

6.  In re Bear Stearns Litigation (N.Y. Sup.Ct.) – The firm serves as a member of the Lead Counsel team in a shareholder class action on behalf of minority stockholders of The Bear Stearns Companies, Inc. alleging The Bear Stearns Companies, Inc. and its officers and directors breached their fiduciary duty and/or violated state laws in an effort to sell the company to JPMorgan for inadequate and unfair consideration.

## ANTITRUST CLASS ACTION LITIGATION

Federal and state antitrust laws are primarily concerned with protecting the economy and promoting competition between businesses by preventing (i) collusion among "competitors" that might result in restraints on competition in a given industry or market, and (ii) anti-competitive conduct by a particular entity who holds monopoly power in a given industry or market.

The firm is involved in several cases on behalf of individuals and businesses that have been injured by the anti-competitive behavior of other companies.  These cases involve allegations such as market manipulation, monopolization, price-fixing, and predatory practices.  Below is a sample of the cases in which we are intensively involved:

SETTLED REPRESENTATIVE ANTITRUST CLASS ACTION CASES

1.  In re Relafen Antitrust Litigation, Case No. 01cv12239 (D. Mass.) – Executive Committee member in federal direct purchaser case, settlement achieved - $175 million.

2.  Heliotrope General, Inc. v. Sumitomo Corporation, et al., Master Case No. 701679 (Cal. Super. - San Diego) – Co-Lead Counsel; settlement achieved - $100 million.

3.  National Metals, Inc. v. Sumitomo Corp., Case No. 734001 (Cal. Super. - San Diego)

– Co-Lead Counsel, settlements achieved with several defendants for $81 million.

4.   <u>In re Warfarin Sodium Antitrust Litigation</u>, MDL Docket No. 1232 (D. Del.) – Discovery Committee member and Co-lead Counsel in state case; settlement achieved in the companion national case - $44.5 million.

5.   <u>Ryan Rodriguez v. West Publishing Corp. and Kaplan, Inc.</u>, Case No. CV-05-3222 R(MCx) (Cal. Central District Court) –  An antitrust class action where FT LLP served as one of three law firms alleging nationwide national antitrust violations. $49 million settlement finally approved; appeals pending.

ONGOING REPRESENTATIVE ANTITRUST CLASS ACTION CASES

1.   <u>In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation</u>, Case No. 05cv1671 (C.D. Cal.) – Co-Lead Counsel in a certified class action lawsuit that alleges antitrust and common law violations which resulted in increased prices for RFG for purchasers.

2.   <u>In re Rambus Antitrust Litigation</u>, Case No. 06-4852 (N.D. Cal.) – Co-Lead Counsel in class action alleging Rambus committed antitrust and common law violations resulting in higher prices for computer memory.

# CONSUMER CLASS ACTION LITIGATION

In federal and state courts throughout the country, the firm represents consumers who have been injured or defrauded.  Our cases involve individuals or classes of individuals who have been physically or economically damaged by the wrongdoing of others.   Some of our cases seek to obtain financial relief, medical monitoring, injunctions and revised notification for classes of plaintiffs. Some of the cases we have brought include:

SETTLED REPRESENTATIVE CONSUMER CLASS ACTION CASES

1.   <u>Gael M. Carter, et al. v. Associates Financial Services Co., Inc., et al.</u>, Case No. 96cv4652 (Tex. Dist. – Dallas County) – The firm played a pivotal role in pursuing the claims of millions of class members in a number of suits in states across the country against The Associates n/k/a Citifinancial, alleging consumer fraud relating to home equity and personal loan terms.  Settlements achieved in the state, federal and companion FTC cases totaling $240 million.

2.   <u>Cavan et al. v. Sears Roebuck & Co. and Whirlpool Corp.</u>, Case No. 04CH10354 (Ill. Circuit Court - Cook County) – Co-Lead counsel for consumer class action based upon the sale of Calypso® washing machines.  Nationwide settlement reached and approved by the Court.

3.   <u>In re The Coca-Cola Company Apple Juice Consumer Litigation</u>, Master Case No. E-47054 (Ga. Super. - Fulton County).  The firm served as Counsel in this consumer

class action based upon the sale of adulterated juice products. $5.25 million settlement achieved.

4.     <u>In re Nestle Juice Products Litigation</u>, Master File No. 976510 (Cal. Super. Ct. San Francisco County) – $3.5 million settlement achieved.

5.     <u>In re Diet Drugs Products Liability Litigation</u>, MDL 1203 (E.D. Pa.). Co-Chair of the Non-PMC litigation group prosecuting class certification of claims not advanced by Plaintiffs' Management Committee.

ONGOING REPRESENTATIVE CONSUMER CLASS ACTION CASES

1.     <u>In re Baycol Products Litigation</u>, MDL Docket No. 1431 (D. Minn.) - Discovery Committee Member in this consolidated multidistrict litigation alleging that this commonly prescribed cholesterol lowering drug caused rhabdomyolysis, a disease which causes damage to muscle, kidney failure or other injuries.

2.     <u>In re "Light" Cigarette Litigation</u>, Case No. 04cv1945 (E.D.N.Y) - Co-lead Counsel, more than a dozen suits in states across the country against major tobacco manufacturers alleging consumer fraud relating to the manufacture and sale of so-called "light" cigarettes, in which the firm has been successful in obtaining class certifications in various states.

3.     <u>In re Mattel Toy Recall Litigation</u>, MDL 1897 – Executive Committee member in an action against Fisher-Price and Mattel in D.C. Superior Court under the District's Private Attorney General Action in connection with toys made with lead paint as well as a consumer action in the Central District of California against Mattel for the toys with magnetic parts which come loose. The suits allege that consumers were harmed not only by the defective design and manufacture, but also by a piecemeal recall that left many families confused as to the proper procedures to follow.

4.     <u>In re Avandia Marketing, Sales Practices and Products Liability Litigation,</u> MDL 1871 - Tracy Rezvani, a partner at FT, serves as a member of the Plaintiffs Steering Committee. The suit alleges that SmithKline Beecham Corporation d/b/a GlaxoSmithKline used marketing schemes to deliberately conceal and affirmatively misrepresent the significant heart attack or heart-disease related risks associated with the use of the Avandia, Avandamet and Avandaryl – medications used to treat Type II diabetes.

ONGOING REPRESENTATIVE THIRD-PARTY PAYOR CLASS ACTION CASES

1.  <u>Ironworkers Local No. 399 and Participating Employers Health And Welfare Funds v. Janssen, L.P.</u>, No. 3:06-cv-03044-FLW-JJH (D.N.J)- FT is serving as Lead counsel of third-party payor class actions. Janssen is alleged to have created, monitored and/or controlled various marketing firms, physicians and ghostwriters to promote and disseminate – through sponsored events and publications – misleading messages about safety and efficacy relating to the off-label use of Risperdal. The complaint alleges that as many as half of the prescriptions for Risperdal are for off-label use, helping to propel sales.

2.  <u>Ironworkers Local Union No. 68 And Participating Employers Health And Welfare Funds, Ironworkers Local Union No. 399 And Participating Employers Health And Welfare Funds, And Ironworkers District Council Of Philadelphia And Vicinty Benefit And Pension Plan, v. Astrazeneca Pharmaceuticals, LP, In re Seroquel Products Liability Litigation</u>, MDL 1769 (M.D. Fla.)- the firm is seeking to serve as a member of the Executive Committee for third-party payor class actions alleging an off-label promotion and marketing scheme which resulted in as much as seventy-eight percent of the prescriptions for Seroquel are for off-label use, leading to increased sales and health risks.

3.  <u>Ironworkers Local Union No. 68 And Participating Employers Health And Welfare Funds; Ironworkers Local Union No. 399 And Participating Employers Health And Welfare Funds; and Ironworkers District Council Of Philadelphia And Vicinity Benefit And Pension Plan; v. Amgen, Inc., In Re Amgen Off-Label Marketing Litigation,</u> MDL 1934 (pending at JPML). The suit details Amgen's illegal promotion and marketing of the Anemia Drugs for off-label use or at doses that result in levels of hemoglobin that are higher than those approved by the FDA as safe and effective. A significant percentage of the prescriptions written for Aranesp and Epogen are for off-label use. The suit alleges that increased demand also increased the price of the drugs.

## COMMUNICATIONS AND COPYRIGHT LAW PRACTICE

The firm lawyers have represented clients in federal courts and before administrative agencies (such as the Copyright Royalty Tribunal, the Copyright Office, and the Federal Communications Commission) and the U.S. Congress. Clients include foreign and domestic media firms with interests in broadcasting, entertainment, cable television and satellite communications.

## FALSE CLAIMS ACT LITIGATION

The firm maintains an active practice under the Federal False Claims Act (also known as the "*Qui Tam*" litigation). Through representation of whistleblowers who have independent knowledge of government contract fraud, the firm seeks to secure the return of millions of dollars to federal and

state treasuries. Currently, the firm has investigated and filed *qui tam* claims in connection with the student loan industry.

## BURTON H. FINKELSTEIN
Partner

BURTON H. FINKELSTEIN has practiced securities litigation for more than forty years, first with the Securities and Exchange Commission, and then in private practice. At the SEC, he was special trial counsel and an Assistant Director of the Enforcement Division, where he was in charge of the administrative, civil and criminal litigation nationwide enforcement program. In 1970, he joined the New York firm of Phillips, Nizer, Benjamin, Krim & Ballon and was a partner in their Washington, D.C. office until 1977, when he and Mr. Thompson formed the firm now known as FINKELSTEIN THOMPSON LLP.

In private practice, Mr. Finkelstein has participated in more than twenty securities fraud trials in cities throughout the United States, representing broker-dealers, principals and securities salesmen, attorneys, accountants, publicly and privately held companies and officers and directors of such companies. He has also represented companies and individuals in SEC investigations, and has served as special counsel to public companies in conducting internal investigations.

Mr. Finkelstein earned a B.B.A. degree in accounting from City College of New York in 1959 and an L.L.B. degree from the University of Pennsylvania in 1962. After military service and a brief stint as law clerk to the General Counsel of the Federal Power Commission, he began his securities litigation career as trial counsel at the SEC's Washington Regional Office.

Mr. Finkelstein has appeared as a panelist in securities litigation and enforcement seminars for the Practicing Law Institute, New York Law Journal and the American Law Institute - American Bar Association (ALI-ABA). He was an adjunct professor of law at Georgetown University Law School from 1979 to 1998. His course was entitled "Securities and Financial Frauds - Enforcement and Litigation."

**DOUGLAS G. THOMPSON**, **JR.**
Partner

DOUGLAS G. THOMPSON, JR. has specialized in administrative and civil trial and appellate litigation in private practice for over twenty years. His practice has been concentrated in the areas of securities, commodities, banking, communications, and other complex business and financial transactions. Mr. Thompson has represented clients in federal court and before the Securities and Exchange Commission, the Commodity Futures Trading Commission, the Federal Trade Commission, the Federal Communications Commission, the Copyright Royalty Tribunal, and the Criminal Division of the Department of Justice. Over the past several years, Mr. Thompson has litigated securities and commodities claims in failed savings and loan cases on behalf of the RTC and FDIC. As lead counsel for the FDIC, Mr. Thompson recently won a jury verdict of more than $1 million after a lengthy trial involving commodities fraud issues.

Mr. Thompson received his A.B. and M.A. degrees in economics from Stanford University and his J.D. degree from Stanford Law School in 1969. He taught at the Stanford Law School in 1969-70 and clerked for Judge Ben. C. Duniway of the United States Court of Appeals, Ninth Circuit, in 1970-71. Following his clerkship, Mr. Thompson joined the law firm of Wilmer, Cutler & Pickering, Washington, D.C., where he was a litigator in communications and securities law. In 1977, he joined with Mr. Finkelstein in the formation of the firm now known as FINKELSTEIN THOMPSON LLP.

Mr. Thompson is a member of the bar of the District of Columbia and the State of California and of several federal district and appellate courts.

## L. KENDALL SATTERFIELD
Partner

KENDALL SATTERFIELD joined FINKELSTEIN THOMPSON LLP in 1985.  Mr. Satterfield practices in the fields of both antitrust and consumer fraud class action litigation. Additionally, he has represented private clients and federal banking agencies in civil and administrative litigation involving securities and commodities fraud, federal banking law and accountant malpractice.  Mr. Satterfield also represents Canadian broadcasters and television production companies in matters involving cable television copyright royalties before the United States Copyright Office and has practiced before the Federal Communications Commission.

Mr. Satterfield is a 1981 graduate of Ohio Northern University where he received a Bachelor of Sciences degree with Highest Honors in Business Administration.  He then attended Emory University where he received his Juris Doctor in 1984.  He is a member of the District of Columbia and Georgia Bars.

## MILA F. BARTOS
Partner

MILA F. BARTOS has been with FINKELSTEIN THOMPSON LLP since January 1995. Ms. Bartos practices in the fields of both antitrust litigation and consumer fraud class action cases, including adulterated and toxic products.  She is a 1990 graduate of the University of Wisconsin - Madison where she received a joint Bachelor of Arts degree in English and Communications.  Ms. Bartos then attended the American University Washington College of Law where she received her Juris Doctor in 1993.  At American University, Ms. Bartos was a co-founder of the *American University Journal of Gender and Law* and was a member of the Editorial Board.

Ms. Bartos is the author of the article, "Law Firm Collaboration Via Extranets" published in the Law Library Resource Xchange.  She is also an active member of the Chairman's Council of the Appleseed Foundation.  Ms. Bartos is a member of the Maryland and District of Columbia Bars.

## DONALD J. ENRIGHT
Partner

DONALD J. ENRIGHT joined FINKELSTEIN THOMPSON LLP as an associate in 1996, and became a partner in January 2004. He is a 1993 *cum laude* graduate of Drew University, where he earned a Bachelor of Arts in Political Science and Economics, and is a 1996 graduate of the George Washington University Law School, where he received his Juris Doctor.  He was a Member Editor of *The George Washington University Journal of International Law and Economics* from 1994 to 1996, and clerked for the House Judiciary Committee in 1994. He is a member of the Bars of the District of Columbia, Maryland, and New Jersey, and is admitted to practice before several United States District Courts and Circuit Courts of Appeal.

Mr. Enright handles matters in the fields of securities, commodities, consumer fraud and commercial litigation, and on behalf of the firm represents several institutional investors in connection with the firm's shareholder litigation practice. He has a track record of achieving victories in federal trials and appeals, including *Nathenson v. Zonagen, Inc.* 267 F. 3d 400, 413 (5th Cir. 2001); *SEC v. Butler,* 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005); and *Belizan v. Hershon,* 434 F. 3d 579 (D.C. Cir. 2006). His recently published securities litigation-related articles include:

- SEC Enforcement Actions and Investigations in Private and Public Offerings, *Securities: Public and Private Offerings*, Second Edition, West Publishing 2007.

- *Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?*, J. Tax'n & Reg. Fin. Inst., September/October 2007, at 5.

Mr. Enright practices in the firm's Washington, DC office, and has been named as one of Washington's "Top Lawyers" by *Washingtonian* magazine.

**TRACY D. REZVANI**
Partner

TRACY D. REZVANI joined FINKELSTEIN THOMPSON LLP in September 1996. Ms. Rezvani practices in the fields of consumer, antitrust and securities fraud litigation. She is a 1993 graduate of the University of Maryland-College Park where she received a Bachelor of Science degree in Business & Management. Ms. Rezvani then attended the George Washington University Law School where she received her Juris Doctor in May 1996. At George Washington University, Ms. Rezvani was a member editor of *The George Washington Journal of International Law & Economics*.

Ms. Rezvani is a member of the District of Columbia and Maryland Bars and is admitted to practice before the United States Supreme Court, the United States Court of Appeals for the District of Columbia Circuit, and the U.S. District Courts for the Districts of Maryland the District of Columbia and the District of Colorado. Ms. Rezvani served as an editor for the Iranian-American Bar Association's *IABA Review* from 2005 to 2007.

Her published works include

- *From Marbury to Rasul: Two Centuries' Expansion on the Question of Jurisdiction*, 1 IABA Review 10 (Winter 2005)
- *The Plight of Padilla: The Impact of Supreme Court Decisions on the Future of Detainees*, 2 IABA Review 12 (Spring 2006).
- *Class Counsel: Conflicts Between Duties To The Class Representative And To The Class*, ABA Antitrust Compliance Bulletin, (Vol. 1, No. 4 November 2007).

Ms. Rezvani practices in the Washington, D.C. office.

**RICHARD M. VOLIN**
Partner

RICHARD M. VOLIN joined FINKELSTEIN THOMPSON LLP in September, 1997 and currently practices in the fields of antitrust and consumer fraud litigation.  He is a 1991 graduate of the University of Michigan at Ann Arbor, where he received a Bachelor of Arts degree in English. Mr. Volin then attended the George Washington University Law School, where he received his Juris Doctor with Honors in 1996.  During law school, Mr. Volin worked as an intern for the Honorable Marian Blank Horn in the United States Court of Federal Claims.  Upon graduation, he served as a judicial law clerk to the Honorable Conrad N. Koch and the Honorable Betty J. Lester in the New Jersey Superior Court for Essex County.

He is a member of the Bars of Maryland, New Jersey and the District of Columbia, and is admitted to practice in the United States District Courts for the District of Columbia, the District of Maryland and the District of New Jersey.

Mr. Volin practices in the Washington, D.C. office.

# HALLEY F. ASCHER
Partner

HALLEY F. ASCHER joined FINKELSTEIN THOMPSON LLP in September 2001.  Ms. Ascher practices in the fields of securities, consumer fraud and antitrust litigation.  She is a 1992 cum laude graduate of the University of Pennsylvania where she received a Bachelor of Arts degree in Elementary Education and a minor in English.  Ms. Ascher then attended University of Pennsylvania Law School where she received her Juris Doctor with Honors in 1996.  While in law school, Ms. Ascher was a research assistant for Professor Heidi M. Hurd specializing in the area of legal philosophy.  She also participated in the University of Pennsylvania Civil Practice Clinic where she was responsible for family law and other civil cases.  She is a member of the Maryland and District of Columbia bars.

Ms. Ascher was previously an associate at a large Washington, DC firm where she specialized in insurance coverage litigation, and has also worked at a large Philadelphia firm where she specialized in intellectual property litigation and import/export compliance.

Ms. Ascher practices in the Washington, D.C. office.

**KAREN J. MARCUS**
Associate

KAREN J. MARCUS joined FINKELSTEIN THOMPSON LLP in April 2004. Ms. Marcus practices in the fields of antitrust and consumer fraud litigation. She is a 1999 graduate of the University of Miami, where she received a Bachelor of Arts degree with honors in English. Ms. Marcus then attended The George Washington University Law School where she received her Juris Doctor, cum laude in 2002. During law school, Ms. Marcus worked as an intern for the Environmental Protection Agency in the Office of Enforcement. While in law school, Ms. Marcus worked as a research assistant for Professor Renee Lerner specializing in the areas of legal history and criminal procedure. She also participated in The George Washington University Law School Environmental Law Clinic and was Vice President of the Environmental Law Association during law school.

Ms. Marcus is a member of the Virginia, Maryland and District of Columbia bars and is admitted to practice before the Eastern District of Virginia.

Ms. Marcus practices in the Washington, D.C. office.

## MICHAEL G. McLELLAN
Associate

MICHAEL G. McLELLAN joined FINKELSTEIN THOMPSON LLP in May 2004.  Mr. McLellan practices in the fields of securities, antitrust and consumer fraud litigation.  He is a 1996 graduate of the University of South Carolina, where he received a Bachelor of Arts degree in English.  Mr. McLellan also attended the University of South Carolina School of Law, where he received his Juris Doctor in 2003.  During law school, Mr. McLellan served as Articles Editor for the South Carolina Law Review and was awarded membership in the Order of the Wig and Robe.  Upon graduation, Mr. McLellan attended the American University Washington College of Law, where he received an LL.M. in Law and Government, magna cum laude in 2004.  While pursuing his LL.M. degree, Mr. McLellan worked as an intern for the Securities and Exchange Commission in the Division of Enforcement and volunteered as a Constitutional Law teacher at Ballou Stay High School.  He additionally worked as an independent researcher for the Association of Corporate Counsel.

Mr. McLellan is a member of the South Carolina and District of Columbia bars.  He practices in the Washington, D.C. office.

**STAN M. DOERRER**
Associate

STAN M. DOERRER joined FINKELSTEIN THOMPSON LLP in March 2006. Mr. Doerrer practices in the fields of securities, antitrust and consumer fraud litigation. He graduated cum laude from Colorado College in 1998, where he received a Bachelor of Arts degree in Economics. Mr. Doerrer worked as a management consultant for four years prior to attending the George Washington Law School where he received his Juris Doctorate degree in 2005. While in law school, Mr. Doerrer completed a legal internship with the U.S. Department of Justice Antitrust Division and served as an Articles Editor for the *American Intellectual Property Law Association Quarterly Journal*.

Mr. Doerrer is a member of the Colorado and District of Columbia bars and practices in the Washington, D.C. office.

## ELIZABETH K. TRIPODI
Associate

ELIZABETH TRIPODI has worked as an associate with FINKELSTEIN THOMPSON LLP since September 2006 and practices in the fields of antitrust, consumer fraud and securities litigation.  She also served as a law clerk for the firm beginning in 2005.  Ms. Tripodi graduated from Davidson College in 2000, where she received her Bachelor of Arts in Art History.  She attended American University Washington College of Law and received her Juris Doctorate *cum laude* in 2006.  While in law school, Ms. Tripodi was a participant in American University's Civil Practice Clinic, a member of the Environmental Moot Court Team, and served as Editor in Chief of the *Business Law Brief*.  Prior to joining FT LLP, Ms. Tripodi completed an internship with the Environmental Enforcement Section at the Department of Justice.

Ms. Tripodi is a member of the Virginia and District of Columbia bars and is admitted to practice in the Eastern District of Virginia. She practices in the Washington, D.C. office.

**ROSALEE B. CONNELL**
Associate

ROSALEE CONNELL has been associated with FINKELSTEIN THOMPSON LLP since October 2006 and practices in the fields of antitrust, consumer fraud and securities litigation.  Ms. Connell graduated from Columbia University in 1999, where she studied Political Science.  She received her Juris Doctorate from Georgetown Law in 2004 and was recognized as a Pro Bono Pledge Honoree.  While in law school, Ms. Connell participated in the Street Law Clinic and served as a student attorney with the D.C. Law Students in Court Clinical Program.  Ms. Connell also completed a clerkship at the U.S. Consumer Product Safety Commission.

Ms. Connell is a member of the New Jersey and District of Columbia bars and is admitted to practice in the District of New Jersey.  She practices in the Washington, D.C. office.

## ROSEMARY M. RIVAS
Associate

ROSEMARY M. RIVAS joined FINKELSTEIN THOMPSON LLP in October 2006 and practices in the fields of antitrust, consumer fraud, and securities litigation. Before joining Finkelstein Thompson LLP, she worked at a San Francisco based law firm representing consumers in class action litigation. Ms. Rivas graduated from San Francisco State University in 1997 and received a B.A. in Political Science. She received her Juris Doctorate from the University of California, Hastings College of Law in 2000. While in law school, Ms. Rivas served as the Senior Note Editor for the Hastings Constitutional Law Quarterly and was honored with the American Jurisprudence Award in Wills and Trusts. Currently, she serves as a Board Member and as Diversity Director of the Barristers Club of the San Francisco Bar Association.

Ms. Rivas is a member of the California bar and is admitted to practice in the Central, Eastern, Northern, and Southern U.S. District Courts of California. Ms. Rivas is also admitted to practice before the Ninth Circuit Court of Appeals. She practices in the San Francisco office.

**SHERI L. KELLY**
Associate

SHERI L. KELLY has been associated with FINKELSTEIN THOMPSON LLP since June 2007. Ms. Kelly practices in the fields of antitrust litigation and consumer fraud. She is a 1997 graduate of the University of California, Berkeley, where she received her Bachelor of Arts in Philosophy and was a member of the speech and debate team. Ms. Kelly received her Juris Doctorate from the University of California, Hastings College of the Law in 2003. While in law school, she served as the Executive Editor of the Hastings Women's Law Journal. Ms. Kelly also served as an extern to the Hon. James R. Lambden of the California Court of Appeal in 2002.

Ms. Kelly is a member of the California Bar and is admitted to practice in the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California. She is the Vice-Chair of the Small Firm and Solo Section of the Barristers Club of the San Francisco Bar Association.  She practices in the San Francisco office.

# MARK PUNZALAN
Associate

MARK PUNZALAN has been associated with FINKELSTEIN THOMPSON LLP since June 2007. Mr. Punzalan practices in the fields of antitrust, consumer fraud, and securities litigation. He is a 2001 graduate of the University of California, Los Angeles, where he received his Bachelor of Arts in Political Science. Mr. Punzalan received his Juris Doctor from Santa Clara University in 2006. While in law school, he was the recipient of the Best Brief Award and the CALI Excellence for the Future Award in Appellate Advocacy. Additionally, Mr. Punzalan was a Committee Chair for the Honors Moot Court Board and also acted as a legal educator for Fresh Lifelines for Youth (F.L.Y.), teaching at-risk youth about the law and consequences of crime.

Mr. Punzalan is currently the Vice-Chair for the Intellectual Property and Internet Law Section for the Barristers Club of the San Francisco Bar Association. He is also a member of the Filipino Bar Association of Northern California and the Asian American Bar Association of the Greater Bay Area. Mr. Punzalan is a member of the California Bar and is admitted to practice in the United States District Courts for the Central and Northern Districts of California. He practices in the San Francisco office.

# SHIVA SHARIFAHMADIAN
Associate

SHIVA SHARIFAHMADIAN has been associated with FINKELSTEIN THOMPSON LLP since September 2007 and practices in the fields of antitrust, consumer fraud and securities litigation. Ms. Sharifahmadian graduated from the University of Virginia in 2003, where she received a Bachelor or Arts degree in French and Foreign Affairs. She received her Juris Doctorate from the George Mason University School of Law in 2007. While in law school, Ms Sharifahmadian served on the Editorial Board of the *Journal of Law, Economics and Policy* and participated in the domestic relations clinic. She was a Writing Fellow for the George Mason Legal Research and Writing Program and a member of the American Inn of Court. She also worked as an intern for the Honorable Leslie M. Alden of the 19th Judicial Circuit Court of Virginia and at the FCC's Public Safety and Homeland Security Bureau.

Ms. Sharifahmadian is a member of the Virginia Bar. She practices in the Washington, D.C. office.

## ROBERTO G. GARCIA, CFA, CFE
Financial Analyst

ROBERTO G. GARCIA, CFA, CFE joined FINKELSTEIN THOMPSON LLP in January 1992.  Mr. Garcia received his Masters in Economics from the University of Missouri in 1982.  He was awarded his Chartered Financial Analyst charter in 1989.  In 2004, Mr. Garcia earned the Certified Fraud Examiner certificate.  Mr. Garcia has experience as a financial analyst, portfolio manager, securities broker, bond trader, credit analyst, debt manager, and litigation analyst.  As a financial institution liquidity manager, Mr. Garcia was responsible for up to $200 million of short term investments, up to $700 million of outstanding debt, and provided assistance to the RTC and FSLIC by valuing, analyzing, or directly selling over $1 billion of assets.  Mr. Garcia has constructed cash flow models for each loan of a $400 million commercial real estate loan portfolio to ensure the accurate application of internal rate of return valuation measures, developed a bank credit scoring system to protect a $100 million portfolio of Fed Funds investments, and created FHLMC securities from mortgage loans.  Mr. Garcia has also analyzed the secondary market trading operations and determined the ongoing profitability of a mortgage banking subsidiary with over $6 billion in loan servicing.  He also priced branch purchases totaling over $650 million in deposits, evaluated corporate acquisitions, made asset/liability strategy recommendations, and prepared bid packages for the sale of a $2 billion savings association.

While at the firm, Mr. Garcia has valued the stock of companies involved in merger negotiations, computed damages, analyzed trading strategies, constructed trial exhibits, applied hedge accounting techniques, and reviewed portfolio compositions in cases involving  stocks, options, swaps, caps, futures (equity, commodity, and fixed income), conventional mortgage-backed securities, MBS derivatives, loan servicing rights, limited partnership units, fixed income instruments, mutual funds, and synthetic securities.  He has developed systematic damage computation techniques for large class action lawsuits including a case that involved more than 600 different limited partnerships and over $3 billion in potential losses.

Ms. Garcia works in the Washington, D.C. office.

**EBONIE BRANCH**
Paralegal

EBONIE BRANCH joined FINKELSTEIN THOMPSON LLP in July 2007.  She received a Bachelor of Arts in Justice from American University, where she graduated *cum laude* and with university honors.  During her undergraduate studies, she was a research and public policy intern at a non-profit advocacy group committed to advancing economic justice and equality for women.

Ms. Branch works in the Washington, DC office

## SEAN T. WOOSLEY
Paralegal

SEAN WOOSLEY joined FINKELSTEIN THOMPSON LLP in August 2006. He is a graduate of Reed College in Portland, Oregon, where he received a Bachelor of Arts degree in German Literature in 2004. Prior to joining FT LLP, Mr. Woosley worked as a paralegal with an employment discrimination firm in Washington, D.C.

Mr. Woosley works in the Washington, DC office

**SHEEREE I. RENWICK**
Paralegal

SHEREE RENWICK joined FINKELSTEIN THOMPSON LLP in September 2007. She is a graduate of University of Miami, where she received a Bachelor of Business Administration degree in Finance in 2007.  Prior to joining FT LLP, Ms. Renwick worked as an immigration legal intern at a San Francisco law firm.

Ms. Renwick works in the San Francisco office.



# FIRM BIOGRAPHY

Schoengold Sporn Laitman & Lometti was originally founded in 1962.  For over 45 years, the firm has specialized in representing investors in securities fraud cases, and its attorneys have an average of over 17.5 years of experience.  During that time, the firm has helped recover billions of dollars for defrauded shareholders. Most recently, the firm represented an additional named plaintiff and certified class representative in the WorldCom securities class action wherein a record $6.13 billion was recovered.  This is one of the largest securities fraud settlements of all time.

Since the enactment of the Private Securities Litigation Reform Act of 1995 -- which legislation sought to increase the role of institutional investors in securities fraud litigation -- the firm has established itself as a leading representative of Taft-Hartley pension and benefit funds in this area of the law.  Schoengold Sporn Laitman & Lometti has served as counsel to dozens of such funds in federal securities fraud cases throughout the country over the past several years.  We represented the very first Taft-Hartley fund to ever seek Lead Plaintiff status in a federal securities fraud class action case, and the very first Taft-Hartley fund to ever be certified by a federal court as a Class Representative in such a case.

Schoengold Sporn Laitman & Lometti is a true boutique law firm; we handle exclusively securities fraud and derivative cases.  And because we are more streamlined than some other firms in the field, we have the ability to be more selective in the cases we bring.  That is why our average recovery as a percentage of damages is approximately thirty-three percent (33%), more than 10 times greater than the larger, more litigious firms in the field.[1]

---

[1] This is based on a comparison of estimated recoverable damages versus the recovery amount for Schoengold Sporn Laitman & Lometti's Post-PSLRA cases, on the one hand, as compared to the results of a study conducted by Cornerstone Research entitled Post-

Our unique ability to maximize damage recoveries was highlighted by Federal District Judge McMahon of Manhattan in Maley v. Del Global Corp., 00-CV-8495 (S.D.N.Y), a case in which Schoengold Sporn Laitman & Lometti acted as Sole Lead Counsel. There Judge McMahon commended the firm for "going the extra mile" in obtaining a settlement that represented approximately 41 percent of the maximum recoverable damages incurred by the class, observing: "Through (Schoengold Sporn Laitman & Lometti's) efforts, after intensive investigation, concentrated litigation and extensive arm's-length bargaining, and without the benefit of any governmental agency's investigation, Class Counsel have secured a settlement fund which confers an excellent benefit to the Class. . . I can't ever remember having participated as a lawyer or a judge in a settlement of a securities fraud class action that yielded in excess of a forty percent rate of recovery."

The Wall Street Journal has also highlighted the firm's distinctive success rate. In an April 25, 2002 article, the Journal cited two of our cases wherein we served as Sole Lead Counsel as being among the largest recoveries as a percentage of damages to date (Anadigics, 44% and Versatility, 30%).

Over the years, SSLL has also litigated important and precedent-setting legal issues. For example, in Singer v. Nicor Corp. (Nicor Corp. Sec. Litig.), where SSLL was Sole Lead Counsel, the firm successfully argued that the stay of discovery under the PSLRA should be lifted in order to obtain important documentation that might well have been lost in the interim. And recently, in In re Dynex Capital Inc. Sec. Litig. and Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc., where SSLL was again acting as Sole Lead Counsel, the courts permitted an expansive use of the class action device in the representation of investors in public offerings. In both cases, each court, in separate decisions, recognized the right of purchasers of securities on one offering to represent purchasers on a separate offering where it was alleged that the offerings were subject to the same alleged corporate misconduct by the same defendants.

Reform Act Securities Lawsuits; Settlements Reported Through Deccember 2003, on the other. The latter uses a different methodology for computing estimated damages than the methodology we employ.



## PROMINENT CASES & RECOVERIES

Among the more prominent cases wherein the firm or its client served in a leadership capacity are the following:

- In re WorldCom Corp. Securities Litigation, 02-CV-3288 (S.D.N.Y.) ($6.13 billion recovery).

- In re McKesson HBOC, Inc. Securities Litigation, 99-CV-20743 (N.D. Cal.) ($1.04 billion settlement subject to court approval).

- In re Oxford Health Plans, Inc. Securities Litigation, MDL Docket No. 1222 (S.D.N.Y.) ($300 million recovery).

- In re Wedtech Securities Litigation, 86-CV-8628 (S.D.N.Y.) ($77.5 million recovery).

- In re Bank One Shareholders Class Actions, 00-CV-880 (N.D. Ill.) ($50 million recovery).

- In re Danis v. USN Communications, Inc., 98-CV-7482 (N.D. Ill.) ($44.7 million recovery).

- In re Nicor Securities Litigation, 02-CV-5168 (N.D. Ill.) (July 9, 2004 - $39 million recovery).

- In re PNC Financial Services Group, Inc. Securities Litigation, 02-CV-271 (W.D. Penn.) ($46.675 million recovery).

- In re JWP Securities Litigation, 92-CV-5815 (S.D.N.Y.) ($36 million recovery).
.

- In re First Investors Securities Litigation, 90-CV-7225 (S.D.N.Y.) ($33 million recovery).

- In re Westar Energy, Inc. Securities Litigation, 03-CV-4003 (D. Kansas) (September 1, 2005 - $30 million recovery).

- <u>In re DSC Communications Corp. Securities Litigation</u>, 85-CV-2005 (N.D. Tex.) ($30 million recovery).

- <u>In re Stern v. Jerome</u> and <u>Fisher Bond Fund v. Davis</u> (<u>SpectraVision Securities Litigation</u>), 94-CV-2236 and 95-CV-3062 (N.D. Tex.) ($28.20 million recovery).

- <u>In re APAC Teleservices Securities Litigation</u>, 97-CV-9145 (S.D.N.Y) ($21 million recovery).

- <u>In re ProNet Securities Litigation</u>, 96-CV-1795 (N.D. Tex.) ($15 million recovery).

- <u>In re Kreigel v. Pacific Scientific Co.</u>, 98-CV-4163 (C.D.Cal.) ($14.75 million recovery).

- <u>In re Anadigics, Inc. Securities Litigation</u>, 98-917 (D.N.J.) ($11.5 million recovery).

- <u>In re Maley v. Del Global Technologies Corp.</u>, 00-CV-8495 (S.D.N.Y.) ($11.5 million recovery).

- <u>In re SPX Corp. Securities Litigation,</u> 3:04-CV-99 (W.D.N.C.) April 13, 2007 – $10 million cash settlement (Sole Lead Counsel)

- <u>In re Datascope Corp. Securities Litigation</u>, 93-CV-4954 (D.N.J.) ($10.5 million recovery).

- <u>In re Kassover v. Coeur d'Alene Mines Corporation Securities Litigation</u>, 92-CV-0015 (D. Ohio) ($5.875 million recovery).

- <u>In re Rite Aid Corp. Derivative Litigation</u>, 99-CV-1349 (E.D. Pa.) ($5 million paid to corporation in conjunction with $334 million class action settlement).

- <u>In re Versatility, Inc. Securities Litigation</u>, 98-CV-1676 (S.D.N.Y.) ($4.625 million recovery).

- <u>In re Alcohol Testing of America, Inc. Securities Litigation</u>, 92-CV-123 (C.D. Cal.) ($ 4.6 million recovery).

- <u>In re Roberts and Silverman v. U.S. Homecare Corp. Securities Litigation</u>, 93-CV-4060 (S.D.N.Y.) ($3 million recovery).



# FIRM RECOGNIZED BY FEDERAL COURTS

Schoengold Sporn Laitman & Lometti's predecessor firm began specializing in shareholder class and derivative securities litigation with its representation of one of the parties in the seminal case of <u>Escott v. Barchris Construction Corp.</u>, 283 F. Supp. 643 (S.D.N.Y. 1968). To this day, <u>Barchris</u> is recognized as the leading securities case dealing with the appropriate standards of liability for issuers, underwriters, accountants and lawyers.

Federal courts throughout the country have long noted the firm's experience and ability in complex securities litigation.   Among the cases in which the firm's credentials were recognized are:

- In <u>Maley v. Del Global Technologies Corp.</u>, 00-CV-8495 (S.D.N.Y.), a case in which Schoengold Sporn Laitman & Lometti acted as sole lead counsel, Judge McMahon commended the firm for "going the extra mile" in obtaining a settlement representing approximately 41 percent of the maximum recoverable damages incurred by the class, observing: "Through Schoengold [Sporn Laitman & Lometti]'s efforts, after intensive investigation, concentrated litigation and extensive arm's-length bargaining, and without the benefit of any governmental agency's investigation, Class Counsel have secured a settlement fund which confers an excellent benefit to the Class . . .  I can't ever remember having participated as a lawyer or a judge in a settlement of a securities fraud class action that yielded in excess of a forty percent rate of recovery."

- <u>In re Westar Energy, Inc. Securities Litigation</u>, 03-CV-4003(D. Kansas), a case in which the class recovered over 34% of total damages, Judge Robinson noted "Class Counsel are highly skilled. They have brought some unique and creative allegations...not based solely on the work of others...but much of which has been based on their own work...the attorneys have great experience, a national reputation, and substantial ability. [T]hey are highly experienced...more than competent...and have diligently represented the class."

- <u>In re SPX Corp. Sec. Litigation</u>, 3:04-CV-99 (W.D.N.C.), the Court commended the firm for its "skill, perseverance[,] … diligent advocacy" and "aggressive representation" of the class in achieving "from a financial standpoint, a very fair settlement" aggregating $10 million, or approximately 22 percent of the maximum recoverable damages, noting that SSL&L is among the "leading attorneys in the country in the area of class actions" and is "extremely competent" and "very experienced."

- In <u>Kriegel v. Pacific Scientific Co.</u>, 98-CV-4163 (C.D. Cal.), a case in which the class received approximately 27 percent of their claimed maximum damages (which was 25 times defendants' estimation of damages), Judge Morrow concluded that the firm's "significant expertise" and the "hard-fought" settlement that was obtained "on the eve of trial" directly contributed to the case's "positive outcome."

- In <u>Behr v. APAC Teleservices, Inc.</u>, 97-CV-9145 (S.D.N.Y.), Judge Jones recognized the "long efforts" of counsel in litigating the case and their "thorough investigation" of plaintiffs' claims, concluding that the "substantial settlement" obtained "saved [the class] a lot of years of complex litigation."

- In <u>In re Rite Aid Corp. Derivative Litigation</u>, 99-CV-1349 (E.D.Pa.), Judge Dalzell noted that Schoengold Sporn Laitman & Lometti "worked efficiently to help produce a result that benefits the corporation and, through it, its shareholders."

- In <u>In re Datascope Corp. Securities Litigation</u>, 93-CV-4954 (D. N.J.), Judge Bassler observed:  "I have been continually impressed with the quality of the work in the case . . . in terms of the way this matter was handled, the professionalism, quality of the legal work, I've never seen anything better, so and for that I'm very grateful to everybody."

- In <u>In re Anadigics, Inc. Securities Litigation</u>, CV-98-917 (D.N.J.), a case in which the class received approximately 44 percent of their legally recoverable damages, Magistrate Judge Wolfson praised the firm's achievement in resolving a difficult and complex case "without prolonging the litigation" and noted that the attorneys handling the matter were "well respected and experienced practitioners."

- <u>In re Versatility, Inc. Securities Litigation</u>, 98-CV-1676 (S.D.N.Y.), Judge Sprizzo commended the firm for negotiating a settlement that "reflects . . . the best interests of the shareholders and the intelligence of the lawyers."

- In <u>Ostroff v. Hemisphere Hotels Corp.</u>, (CCH) Fed. Sec. L. Rep. ¶ 94,713 (S.D.N.Y. 1974), Judge Bonsal observed that "Messrs. Schoengold and Sporn are able attorneys, especially in Securities acts cases."

- In <u>Abramson v. Hyatt International</u>, (CCH) Fed. Sec. L. Rep. ¶ 98,447 (S.D.N.Y. 1982), Judge Lowe commented that "Counsel on both sides are highly respected members of the bar and have substantial experience in stockholder litigation, federal securities litigation and class action litigation."

- In <u>IDI Securities Litigation</u>, 84-CV-3870 (S.D.N.Y.), where shareholders received over 95 percent of their recognized losses, Judge Broderick stated that the legal work done on behalf of the class was "excellent" and "the result was an excellent result."